Leon Hardin, AH6695
Name and Prisoner/Booking Number

CSP-Sacramento
Place of Confinement

P.O. Box 290066
Mailing Address

Represa, CA 95671
City, State, Zip Code

**FILED**

APR 0 6 2018

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
        DEPUTY CLERK

(Failure to notify the Court of your change of address may result in dismissal of this action.)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

Leon Hardin
(Full Name of Plaintiff)          Plaintiff,

v.

(1) B. Dennis
(Full Name of Defendant)

(2) R. Sparks.

(3) _____

(4) _____
                    Defendant(s).

☐ Check if there are additional Defendants and attach page 1-A listing them.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. 2:17-CV-01340-LC.
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT
BY A PRISONER**

☐ Original Complaint
☒ First Amended Complaint
☐ Second Amended Complaint

## A. JURISDICTION

1.  This Court has jurisdiction over this action pursuant to:
    ☒ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
    ☐ 28 U.S.C. § 1331; Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).
    ☐ Other: _____.

2.  Institution/city where violation occurred: Cal. State Prison-Sacramento (SAC).

Revised 3/15/2016

1

## B. DEFENDANTS

1. Name of first Defendant: _B. Dennis_____. The first Defendant is employed as:
_Correctional OFFicer (C/O)_____ at _SAC._____.
           (Position and Title)                                           (Institution)

2. Name of second Defendant: _R. SparKs_____. The second Defendant is employed as:
_C/O._____ at _SAC._____.
           (Position and Title)                                           (Institution)

3. Name of third Defendant: _n/R., Passim._____. The third Defendant is employed as:
_____ at_____.
           (Position and Title)                                           (Institution)

4. Name of fourth Defendant: _____. The fourth Defendant is employed as:
_____ at_____.
           (Position and Title)                                           (Institution)

If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?    ☐ Yes    ☒ No

2. If yes, how many lawsuits have you filed? _____. Describe the previous lawsuits:

  a. First prior lawsuit:
    1. Parties: _n/R., Passim._____ v. _____
    2. Court and case number: _____.
    3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)_____
    _____.

  b. Second prior lawsuit:
    1. Parties: _____ v. _____
    2. Court and case number: _____.
    3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)_____
    _____.

  c. Third prior lawsuit:
    1. Parties: _____ v. _____
    2. Court and case number: _____.
    3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)_____
    _____.

If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.

## D. CAUSE OF ACTION

### CLAIM I

1.  State the constitutional or other federal civil right that was violated: *U.S. Const. 8th Amend.*
*Unnecessary and Excessive Force, Under Color of Law.*

2.  **Claim I.** Identify the issue involved. Check **only one.** State additional issues in separate claims.
    - ☐ Basic necessities
    - ☐ Mail
    - ☐ Access to the court
    - ☐ Medical care
    - ☐ Disciplinary proceedings
    - ☐ Property
    - ☐ Exercise of religion
    - ☐ Retaliation
    - ☒ Excessive force by an officer
    - ☐ Threat to safety
    - ☒ Other: *Unnecessary Force*

3.  **Supporting Facts.** State as briefly as possible the FACTS supporting Claim I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

    *1. On the date of 10, 28, 2016 Plaintiff was inside the Administrative Segregation Unit (ASU.) of SAC.. Being escorted by Defendant(s) Dennis and Sparks Plaintiff was led to a Small Holding Cell, of which had no open Windows or Ventilation.*

    *2. At all times herein alleged Plaintiff Physically had only one Lung, a Preexisting Bodily Deficiency that Compounded the gravity of Defendant's actions.*

    *3. Arriving at the Holding Cell Plaintiff watched as Defendant Dennis Unholstered his Can of O.C. Spray (Chemical Repellent). Doing so Dennis Proceeded to Aim the Canister into and at the Floor of the Holding Cell.*

    *(Continues on Following Page)*

4.  **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
    *Plaintiff was Subjected to Physical Torture and Mental Terror*

5.  **Administrative Remedies:**
    a.  Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?      ☒ Yes   ☐ No
    b.  Did you submit a request for administrative relief on Claim I?      ☒ Yes   ☐ No
    c.  Did you appeal your request for relief on Claim I to the highest level?      ☒ Yes   ☐ No
    d.  If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. *Remedies have been Exhausted. See Exhibit "A", (Exh) hereto, 602 Log No. SAC-S-16-04075.*

3

This done, Dennis proceeded to spray a Healthy Portion of the Chemical Agent on to the Floor of the Holding Cell, painting it Orange.

4. Coughing himself from the Pungence and effectiveness of the Chemicals Dennis Ordered Plaintiff to enter the Cell. Plaintiff Protested telling Dennis "I'm not going in there, I got Asthma." Dennis responded by taking hold of Plaintiff by the Arm and Ushering him in. "Strip," He told Plaintiff. This done Sparks stood back to Keep a Safe distance from Inhaling the Chemicals, while Dennis covering his own nose and Mouth with his Hand Hurriedly Closed the Door of the Holding Cell Trapping Plaintiff inside with the Fumes that were Specifically Engineered, Designed by Scientists to overwhelm and Incapacitate the Lungs.

5. Looking through the Glass of the Holding Cell's Door Plaintiff yelled "Hey man, I got Asthma, this aint Funny, I cant Breathe". Sparks was Standing Back against the Wall Opposite the Cell Laughing hard.

4

"Take Short Breaths," Dennis told Plaintiff also Laughing as the two walked away leaving Plaintiff behind inside the Makeshift Gas Chamber, to Suffocate.

6. Plaintiff struggled but was able to remove the Cloths that he was wearing believing that the sooner he Followed orders and "Stripped" the Faster he'd be let out of the Gas Chamber. Having began to sweat and Gag Plaintiff was Banging on the Door attempting to compel Defendant(s) to let him out when he became Lite-Headed and collapsed on to the Floor where he Laid in the Toxic Orange colored Spray, His Body on Fire as the Burn of the Agent integral to the Compounds of the spray went to work on his Nerve System, operating in the Fashion they were Designed to, and in the Fashion that Dennis who received Training in the use of the Chemical Knew it would effect.

7. The Door of the Cell having been opened, Air swept in and Plaintiff regained Consciousness. He was "Drug" out

of the Cell and the Orange Fuming
Muck and given a White Jumper to put
on. "I thought he was Lying", Plaintiff
heard a voice say but could not See
who was speaking due to the effects
of the Chemicals he was totally Blinded
and had a great deal of Mucus running
From his Nose down his Face.

8. Plaintiff was then placed inside
the Cell next to the one from which he
came. The Door Closed he struggled but
eventually got into the Jumper. He was
not allowed to "Decontaminate", Clean
himself prior to Donning the Jumper, this
in violation of CDCR. Policy and Coleman
Act Court Order. Plaintiff who was
CCCMS. at the time of this incident
was a Class Member and entitle to
the Procedures and Process integral.
See Exh "B", Coleman v. Brown Fact Sheet
2016 up-date, at p.1 Paragraph #1, accord,
p.8 "O.C. spray."

. . . .

9. Minutes subsequent Plaintiff was in the throws of an Asthma Attack and had R.N. LuKa provide him an Inhaler of which six Round of Treatment were necessary to abate the induced Inflaming of Plaintiff's One Lung engendered by the Chemical, and even after continued to experiance the effects of the Spray For Week(s) subsequent, i.e., Burning Sensation on the skin, Eyes, and Parched Breathing.

10. Plaintiff alleges that Defendant Dennis acted with Evil Intent to cause Pain and Mental Anguish, and at all the instances mentioned herein his Actions were Malicious, Wanton, Sadistical, Dispicable, unjustifiable, and Oppressive.

11. Plaintiff Further alleges that Defendant Dennis in admitting to have done those things alleged herein evidences a conscious disregard For Plaintiff's Rights. See Exh "k," at p.1. underlined Portions

7

## CLAIM II

1.   State the constitutional or other federal civil right that was violated: *U.S. Const. 8th Amend.*
*Deliberate Indifference.*

2.   **Claim II.** Identify the issue involved. Check **only one**. State additional issues in separate claims.
☐ Basic necessities          ☐ Mail               ☐ Access to the court      ☐ Medical care
☐ Disciplinary proceedings   ☐ Property           ☐ Exercise of religion     ☐ Retaliation
☐ Excessive force by an officer   ☒ Threat to safety   ☒ Other: *Failure to Protect*

3.   **Supporting Facts.** State as briefly as possible the FACTS supporting Claim II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.
*12. Plaintiff alleges that Defendant Sparks acted with Deliberate Indifference when he failed to Protect him from Dennis's assault and subjection to actual Torture by Definition of Conventions.*

4.   **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
*Plaintiff was subjected to Physical Torture and Terror*

5.   **Administrative Remedies.**
   a.   Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?                                                                  ☒ Yes   ☐ No
   b.   Did you submit a request for administrative relief on Claim II?        ☒ Yes   ☐ No
   c.   Did you appeal your request for relief on Claim II to the highest level?   ☒ Yes   ☐ No
   d.   If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. *See Exh "A". supra*

## VariFication

I, Leon Hardin, Plaintiff in this Action
have read the Foregoing Complaint and
hereby verify that matters alleged herein
are true and correct except as to matters
alleged on information and belief and
as to those I believe them true. I Certify
, Swear under the penalty of perjury
under the Laws of the United States
that the foregoing is true and Correct.

Date: 3-27-18

9

## E. REQUEST FOR RELIEF

State the relief you are seeking:

_Damages in sum of $200,000, Punitive in sum of $500,000, and Mental and Emotional in sum of $150,000._

_Offer to Settle is Propounded at $130,000 and will expire 30 days from date of service. Counter of no less that $120,000 will be Considered, Resolve._

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ____3 - 27 - 18____
              DATE

_____
SIGNATURE OF PLAINTIFF

_N/E. passim._

(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

_N/E., Passim._

(Signature of attorney, if any)

_____
_____
_____

(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space you may attach more pages, but you are strongly encouraged to limit your complaint to twenty-five pages. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages. Remember, there is no need to attach exhibits to your complaint.

Exhibits A - B

Exh "A"   Pages: 5

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
OFFICE OF APPEALS
P. O. BOX 942883
SACRAMENTO, CA  94283-0001

# THIRD LEVEL APPEAL DECISION

(A - 1)

Date:   MAR 1 0 2017

In re:   Leon Hardin, AH6695
California Correctional Institution
P.O. Box 1031
Tehachapi, CA  93581

TLR Case No.: 1700159        Local Log Nos.: CCI-16-02223 and SAC-16-04075

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner H. Liu, Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I   APPELLANT'S ARGUMENT:** It is the appellant's position that California State Prison - Sacramento (SAC) staff were unprofessional and unethical. The appellant states on October 28, 2016, while he was housed in the Short Term Restricted Housing, he observed Officer B. Dennis conducted himself in an unethical and unprofessional manner. The appellant states he observed Officer Dennis sprayed Oleoresin Capsicum pepper spray on the floor of cell #116 and ordered the appellant in the holding cell which was inside of cell #116 for an unclothed body search. The appellant states after entering the holding cell, the door was locked and the cell door was closed; which caused him to have immediate shortness of breath. The appellant states as he struggled to breathe and remove his clothing, he yelled out and alerted he had asthma. The appellant states he heard giggling and laughing as his eyes were wet and he began gagging and perspiring. The appellant states the cell door was opened and heard an individual said, "I thought he was lying." The appellant states he was removed from cell #116 and placed in cell #117, where he was able completed getting dress. The appellant states prior to being escorted to his assigned cell, Nurse Luka administered six "puffs" from an inhaler, which safe his life.

The appellant requests the involved Officer or Officers be terminated or disciplined and retrained. The appellant requests he be compensated for mental and physical injuries.

**II   SECOND LEVEL'S DECISION:** The Second Level of Review (SLR) identified and addressed the appellant's allegations of staff misconduct. The reviewer documented that an appropriate supervisory staff member was assigned to conduct an inquiry into this matter. The inquiry included a review of the evidence and an evaluation of any interview conducted. In order to determine the facts, the inquiry also included a review of pertinent documents, current policies, laws, and procedures. The SLR noted that all staff personnel matters are confidential in nature, and that the appellant would only be notified whether the actions of staff were or were not in compliance with policy. The SLR found that the staff did violate policy as alleged. The SLR partially granted the appeal in that an inquiry was conducted.

**III   THIRD LEVEL DECISION:** Appeal is denied.

    **A.   FINDINGS:** Upon review of the documentation submitted, the Third Level of Review (TLR) finds that the appellant's allegations were appropriately reviewed and evaluated by administrative staff. The TLR notes that all staff personnel matters are confidential in nature and will not be disclosed to other staff, the inmate population, the general public, or the appellant. The appellant was informed that if the conduct of staff was determined to not be in compliance with policy, the institution would take the appropriate course of action. In this case, the SLR informed the appellant that an inquiry was completed and disclosed the determination of the inquiry to the appellant. The TLR reviewed the confidential inquiry and concurs with the determination of the SLR. The TLR notes that, while the appellant has the right to submit an appeal as a staff complaint, requests for: administrative action regarding staff; the placement of documentation in a staff member's personnel file; to reprimand staff; to remove staff from a position; and/or requests for monetary compensation are beyond the scope of the appeals process. The TLR finds the institution's response complies with departmental policy, and the appellant's staff complaint allegations were properly addressed. Therefore, no further relief shall be afforded at the TLR.

LEON HARDIN, AH6695
CASE NO. 1700159
PAGE 2



**B.   BASIS FOR THE DECISION:**
California Code of Regulations, Title 15, Section: 3004, 3084.1, 3268, 3270, 3380, 3391

**C.   ORDER:**  No changes or modifications are required by the Institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.  If dissatisfied, the appellant may forward this issue to the California Victims Compensation and Government Claims Board, Government Claims Unit, P.O. Box 3035, Sacramento, CA 95812-3035, for further review.


H. LIU, Appeals Examiner                                              M. VOONG, Chief
Office of Appeals                                                          Office of Appeals

cc:       Warden, CCI
           Appeals Coordinator, CCI
           Appeals Coordinator, SAC

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL**
CDCR 602 (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

*A-3*

1700159

AH6695

IAB USE ONLY | Institution/Parole Region: | Log #: | Category:

CDC-16 02223
S+C B-16-04075

FOR STAFF USE ONLY

Yo̶̶̶ ̶̶̶̶̶̶̶̶̶̶̶̶ns and Rehabilitation (CDCR) decision, action, condition, policy or regulation that has a material adverse effect upon your welfare and for which there is no other prescribed method of departmental review/remedy available. See California Code of Regulations (CCR), Title 15, Section 3084.1. You must send this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar days of the event that led to the filing of this appeal. If additional space is needed, only one CDCR Form 602-A will be accepted. Refer to CCR 3084 for further guidance with the appeal process. No reprisals will be taken for using the appeal process.

Appeal is subject to rejection if one row of text per line is exceeded. | **WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

Name (Last, First): Hardin, Leon | CDC Number: AH6695 | Unit/Cell Number: Z-G-187 ADSEG | Assignment: Stand Alone

State briefly the subject of your appeal (Example: damaged TV, job removal, etc.):
Unprofessional Unethical Employee Misconduct

**A.** Explain your issue (If you need more space, use Section A of the CDCR 602-A): On 10-28-16 officer Dennis was unethical acting unprofessionally when he sprayed Chemical Agent this force is used to stop an incident. It was sprayed on the floor of Cell 116 next to the Nurse Station in Stand Alone AD-SEG. While it

**B.** Action requested (If you need more space, use Section B of the CDCR 602-A): Officer or Officers should be fired or at least disciplined and Re-Trained. I want to be compensated for Injuries Mentally and Physically. You cannot take back the Unethical Malice placed upon me, so I deserve to be awarded

Supporting Documents: Refer to CCR 3084.3.

☒ Yes, I have attached supporting documents.

List supporting documents attached (e.g., CDC 1083, Inmate Property Inventory; CDC 128-G, Classification Chrono):

CDC 7362 #0221371          CDCR 1858
Health Care Service Request Form    Right and Responsibility Statement

☐ No, I have not attached any supporting documents. Reason: _____

Inmate/Parolee Signature: *[signature]* | Date Submitted: 11-3-16

☐ By placing my initials in this box, I waive my right to receive an interview.

**C. First Level - Staff Use Only** | Staff – Check One: Is CDCR 602-A Attached? ☐ Yes ☐ No

This appeal has been:
☐ Bypassed at the First Level of Review. Go to Section E.
☐ Rejected (See attached letter for instruction) Date: ___ Date: ___ Date: ___ Date: ___
☐ Cancelled (See attached letter) Date: ___
☐ Accepted at the First Level of Review.

Assigned to: ___ Title: ___ Date Assigned: ___ Date Due: ___

First Level Responder: Complete a First Level response. ~~BYPASS~~ name, title, interview date, location, and complete the section below.

Date of Interview: ___ Interview Location: ___

Your appeal issue is: ☐ Granted ☐ Granted in Part ☐ Denied ☐ Other

See attached letter. If dissatisfied with First Level response, complete Section D.

Interviewer: ___ (Print Name) Title: ___ Signature: ___ Date completed: ___

Reviewer: ___ (Print Name) Title: ___ Signature: ___

Date received by AC: ___

AC Use Only
Date mailed/delivered to appellant ___ / ___ / ___

*[stamps: RECEIVED INMATE APPEALS, NOV 7 2016; DEC 14 2016; REC BY OOA JAN 6 2017]*

**D. If you are dissatisfied with the First Level response,** explain the reason below, attach supporting documents and submit to the Appeals Coordinator for processing within 30 calendar days of receipt of response.   If you need more space, use Section D of the CDCR 602-A.

BYPASS

Inmate/Parolee Signature: _____     Date Submitted : _____

**E. Second Level - Staff Use Only**   Staff – Check One: Is CDCR 602-A Attached? ☒ Yes   ☐ No

This appeal has been:

☐ By-passed at Second Level of Review.  Go to Section G.
☐ Rejected (See attached letter for instruction) Date: _____ Date: _____ Date: _____ Date: _____
☐ Cancelled (See attached letter)
☒ Accepted at the Second Level of Review
Assigned to: D. Gonzales   Title: SGT   Date Assigned: 11-16-16   Date Due: 11-23-16   12-22-16

Second Level Responder: Complete a Second Level response. If an interview at the Second Level is necessary, include interviewer's name and title. Interview date and location, and complete the section below.

Date of Interview: 11/16/16   Interview Location: STRH SERGEANT OFFICE

Your appeal issue is:  ☐ Granted  ☒ Granted in Part  ☐ Denied  ☐ Other: _____

See attached letter. If dissatisfied with Second Level response, complete Section F below.

Interviewer: D. Gonzales (Print Name)   Title: SGT   Signature: _____   Date completed: 11/23/16

Reviewer: O. Baughman (Print Name)   Title: Warden (A)   Signature: _____   REC BY 12-22-16

Date received by AC: 12/06/16

AC Use Only
Date mailed/delivered to appellant 12-06-16

**F. If you are dissatisfied with the Second Level response,** explain reason below; attach supporting documents and submit by mail for Third Level Review. It must be received within 30 calendar days of receipt of prior response. Mail to: Chief, Inmate Appeals Branch, Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, CA 94283-0001. If you need more space, use Section F of the CDCR 602-A.

My Action Requested in Section B has not be honored or offered namely compensation for the Malicious torture that almost caused me to be murdered by Officer Dennis. My breathing has become worse & im more terrified of People working for CDCR mostly Officers. And their Superiors such a Sgt. Gonzales who tried to water down and lessen the severity of damaged caused.

Inmate/Parolee Signature: _____   Date Submitted: 12-29-16

**G. Third Level - Staff Use Only**   POSTM . 1/3/17

This appeal has been:

☐ Rejected (See attached letter for instruction) Date: _____ Date: _____ Date: _____ Date: _____ Date: _____
☐ Cancelled (See attached letter)   Date: _____
☒ Accepted at the Third Level of Review. Your appeal issue is ☐ Granted  ☐ Granted in Part  ☒ Denied  ☐ Other: _____
See attached Third Level response.

Third Level Use Only
Date mailed/delivered to appellant   MAR 1 4, 2017

**H. Request to Withdraw Appeal:** I request that this appeal be withdrawn from further review because; State reason. (If withdrawal is conditional, list conditions.)

_____
_____
_____

Inmate/Parolee Signature: __   Date: _____

Print Staff Name: __   Title: __   Signature: __   Date: _____

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL FORM ATTACHMENT**
CDCR 602-A (REV. 03/12)


*A-4*

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

| | IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|---|
| 1700159 | | SAC $-16-04075 | | 7 |
| | | 0 - 16 - 02223 FOR STAFF USE ONLY | | |

Attach this form to the CDCR 602, only if more space is needed.  Only one CDCR 602-A may be used.

**Appeal is subject to rejection if one row of text per line is exceeded.      WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| Hardin, Leon | AH6695 | AD-SEG Z-G-157 | Stand Alone |

**A. Continuation of CDCR 602, Section A only (Explain your issue):** Was fresh on the floor
officer Dennis commanded me to go in cage in cell 116. And to remove all
clothing for strip search. When I entered the cage and it was locked the
front door of that cell was closed. I immediately started choaking and suffering
shortness of breath. I seen no vents. As I struggled to remove clothing, I
yelled out with the little strength I could muster. I Have Asthma!! I
heard giggling and laughing as my eye were watering and I started gaging and
sweating. I remember going to the floor when the cell door came open.
Then the cage was unlocked while someone said. I Thought He Was Lie-ing!
A hand grabed my arm helping me to next door cell also with a cage. Door
was close. put white AD-SEG jump suit on as fast as possible while still
coughing, gagging, choking, runny nose, watering eyes, shortness of breath,
and sweating. I prayed to God to not let me die this way!! I was just beat
sided and beat up by some inmates on C-Yard. And I was taken to the Hole instead
of the inmates who attacked and Battered me. So they get rewarded and continue
these program. While me the victum losses every program I was is trying to better
my life. So, as luck and God would have it Nurse Luka came to cell with
an inhalers. I took around six or so puffs that saved my life.

Inmate/Parolee Signature: _[signature]_          Date Submitted: 11-3-16

**B. Continuation of CDCR 602, Section B only (Action requested):** Compensation for the hanious act the
officer(s) of CDCR used on me violating the Title 15, the DOM, and my Civil
Rights.

Inmate/Parolee Signature: _[signature]_          Date Submitted: 11-3-16

REC BY OOA
JAN 0 6 2017

DEC 14 2016 PM12

**D.  Continuation of CDCR 602,  Section D only (Dissatisfied with First Level response):** _____

# BYPASS

**Inmate/Parolee Signature:** _____ **Date Submitted:** _____

**F.  Continuation of CDCR 602, Section F only (Dissatisfied with Second Level response):** _____

**Inmate/Parolee Signature:** _____ **Date Submitted:** _____

Template Date 4/4/2012

Attachment E-2

Page 2

0-16 02223

Page 2

> **An Appeal Inquiry has been conducted and reviewed by the hiring authority.**
> The following individuals were interviewed: Correctional Officers B. Dennis,
> R. Sparks and Psychiatric Technician Luka.  As a result of your staff misconduct
> allegation the following information was reviewed: STRH Isolation Log Book for
> staff accountability.  Staff did violate CDCR policy with respect to the issues
> raised.

**FINDINGS:**

Your appeal is PARTIALLY GRANTED in that:

- An Appeal Inquiry into your allegation is being conducted.

**ALL STAFF PERSONNEL MATTERS ARE CONFIDENTIAL IN NATURE**. As such,
the details of any inquiry or investigation will not be shared with staff, members of the
public, or offender appellants. Although you have the right to submit a staff complaint,
a request for administrative action regarding staff or the placement of documentation
in a staff member's personnel file is beyond the scope of the staff complaint process.
Allegations of staff misconduct do not limit or restrict the availability of further relief via
the inmate appeals process. If you wish to appeal the decision, you must submit your
staff complaint appeal through all levels of appeal review up to, and including, the
Secretary's Level of Review. Once a decision has been rendered at the Third Level,
your administrative remedies will be considered exhausted.


Name _D. Gonzales_____  Signature_____  _11/30/16_
　　　　　Interviewer　　　　　　　　　　　　　　　　　　　　　Date

Name _D. BAUGHMAN___  Signature_____  _12/5/16_
　　　　Hiring Authority　　　　　　　　　　　　　　　　　　　　Date


Appeal Log Number: <u>SAC-S-16-04075</u>

Exh "B"  Pages: 8

## FACT SHEET

*(B-1)*

Implementation of April 10, 2014 Court Order on
Segregation, Use of Force, and Disciplinary (RVR) Processes
*Coleman v. Brown*

### Last Updated: March 2016

In fall 2013, the *Coleman* court held trials about CDCR's disciplinary processes and use of force against *Coleman* class members, and CDCR's use of administrative segregation units (ASU) and Security Housing Units (SHU) to house *Coleman* class members. On April 10, 2014, the *Coleman* court issued a 74-page order requiring substantial changes to CDCR's policies and procedures regarding the use of force and segregation, as they apply to *Coleman* class members.

In August 2014, CDCR filed plans and procedures to implement the court's order. The major changes in those policies and procedures are described below:

### Limits on Use of Non-Disciplinary Segregation

CDCR's new policy limits when and for how long CDCR can use administrative segregation units to house inmates on the mental health caseload who are not charged with an RVR. The new policy provides for priority scheduling of ICC for inmates in non-disciplinary segregation (NDS). In all cases, the ICC must be scheduled within 10 calendar days of placement. Under the new policy, *Coleman* class members must be transferred out of segregation units within 72 hours of NDS-Accelerated Transfer designation by the ICC. In cases where the NDS-Accelerated Transfer inmate is not transferred out of a segregation unit within that timeframe, the inmate should be transferred to an NDS hub at CSP-Sacramento within 72 hours of NDS designation. All NDS inmates will be granted yard and canteen privileges and will have access to personal property, even if they are not designated for the 72-hour accelerated transfer timeline.

Some class members will have NDS privileges (canteen, yard, property), but will <u>not</u> be subject to the 72-hour time limit for transfer. This includes inmates who are out-to-court for non-criminal proceedings, inmates placed in segregation units after the expiration of their SHU terms, inmates placed in segregation units upon transfer to their endorsed institution and waiting for an appropriate bed to become available at that institution, and inmates being processed at Reception Centers.

Certain class members in segregation units without pending or final RVRs will <u>not</u> be considered NDS. This includes inmates who refuse to cooperate with investigations into safety concerns, inmates who are out-to-court for criminal proceedings, and inmates with cases requiring Department Review Board action.

*This policy was implemented starting in October 2014.*

(β-2)

### Pre-MERD Review Policy

Historically, there has been a problem with CDCR keeping inmates in the SHU, PSU, or ASU past the completion of their SHU term. In order to more quickly transfer inmates out of segregation units after their SHU terms expire, CDCR has developed a new policy to review case factors for all inmates serving SHU terms in the SHU, PSU, or ASU. This review will take place 120 days before the expiration of an inmate's Minimum Eligible Release Date (MERD). For inmates serving SHU terms less than 120 days, CDCR will consider a plan for release from segregation at the initial ICC.

*According to CDCR, pre-MERD reviews began in October 2014.*

### Certification of EOP ASU Hubs

In order to ensure that class members in EOP ASU hubs are receiving adequate treatment and that the units meet basic standards, CDCR will now complete monthly certifications regarding conditions in the EOP ASU hubs. Each EOP ASU hub unit must receive an initial certification that it meets basic standards, including staffing levels, treatment space, and the provision of treatment hours and out-of-cell time. After that initial certification, the Warden and Chief of Mental Health have to sign a monthly certification that conditions have not changed significantly. If an EOP ASU hub does not meet the certification standards two months in a row, it will be closed to intake until it regains certification.

*Evaluations for the initial certification of EOP ASU hubs began in August 2014. The certification process is ongoing, and being monitored by the Coleman Special Master.*

### Ending the Use of Management Cell Status

"Management cells" were temporary cells within segregation units that CDCR used to house inmates who deemed to display disruptive, destructive, or dangerous behavior and who would not comply with staff's orders. We understood that many *Coleman* class members were being placed in these management cells, often for several days at a time. Following the April 10, 2014 order, CDCR issued a temporary ban on the use of management cells for *Coleman* class members. In fall 2015, CDCR announced its plan to eliminate Management Cell Status systemwide, for *all* CDCR prisoners.

### Changes to Strip Search Policies in EOP ASU Hubs and PSUs

CDCR's new policy reduces the routine use of strip searches for *Coleman* class members in <u>EOP ASU hubs</u> and <u>PSUs</u>. Under the new policy (revised at *Department Operations Manual (DOM)* Section 52050.16.6), inmates in EOP ASU hubs and PSUs



FACT SHEET: *Coleman v. Brown*
April 10, 2014 Court Order
Page **3** of **8**

will no longer be routinely strip searched when returning from an out-of-cell activity, so long as the inmate was under constant staff supervision while at the activity. CDCR will also stop routinely strip searching inmates who are exiting their cells for activity within the unit. Instead, those inmates will be subject to a clothed pat down search and scanned with a metal detector.

Under the new policy, strip searches will be conducted in inmates' cells unless that location lacks privacy, in which case the search shall be conducted in a private setting.

*This policy should be in effect as of March 2015.*

## New Procedures Regarding Treatment Refusals in EOP ASU Hubs

Due to concerns about chronic treatment refusals by some class members, CDCR has directed mental health and custody staff in EOP ASU hubs to review and respond to repeated treatment refusals by *Coleman* class members in those units. In the case of any inmate who has refused more than 50% of offered treatment activities over a two-month period, mental health clinicians and custody staff must meet to consider the causes of the refusals and work together to resolve the issue. If custodial policies (such as strip searches) are identified as a cause of treatment refusals, the Chief Deputy Warden and Chief of Mental Health will consider alternatives to the security policies, where possible without jeopardizing the security of the unit.

It is important to note that EOP class members with high levels of treatment refusals will <u>not</u> be subject to CDCR's new policy giving "milestones" sentence reduction credits of up to two weeks every six months for EOP prisoners who attend 80% of groups offered to them.

*The treatment refusal policy should be in effect as of February 2015.*

## Periodic Length of Stay Reviews for Class Members in Segregation Units

To reduce class members' lengths of stay in segregation units and return class members to non-segregated housing as quickly as possible, CDCR has issued a policy requiring a review of class members with extended lengths of stay in segregation units. The new policy requires CDCR to review the case factors for the following *Coleman* class members: (1) any class member held in ASU for over 150 days; (2) any class member serving a determinate SHU term who has been in segregated housing for more than 30 continuous months and is over a year from release; and (3) any class member serving an indeterminate SHU term and has been in SHU or PSU housing for at least two years. Reviews will <u>not</u> be conducted for class members whose cases involve the Department Review Board or the Security Threat Group process.



The first review will be done by the ICC to determine whether it is necessary for the class member to remain in segregated housing. The ICC may consider release to appropriate non-segregated housing. The ICC will review an inmate's underlying CDC Form 115 Rules Violation Report (if applicable) to determine what role the class member's mental health played in the violation. The ICC will also review whether the inmate's current treatment plan is appropriate or if modifications are required.

If the ICC does not release the inmate to non-segregated housing, the case will be referred for a second review (called a "Long Term Segregated Case Conference") at CDCR headquarters within 30 days of the ICC review. Decisions by CDCR headquarters to keep a class member in segregation will be reviewed at least once every 180 days for class members in the SHU/PSU and at least once every 90 days for class members in the ASU.

CDCR has informed us that the case-by-case review process has begun and is ongoing.

## CCCMS Short Term Restricted Housing

In order to address concerns about the conditions and lack of out-of-cell time for class members in administrative segregation units, CDCR has created a new type of segregated housing unit for CCCMS class members. The new housing units will be called Short-Term Restricted Housing (STRH) units, and will be located at up to nine male institutions. CDCR plans to open the STRH units on a rolling basis.

For male prisoners, CDCR will use "standalone" administrative segregation units that the court had previously not approved for *Coleman* class members due to their physical construction. To make up for physical problems with the units, male CCCMS prisoners will be offered 20 hours per week of out of cell time, as opposed to the 10 hours previously offered in ASU. Every CCCMS class member in an STRH unit should be offered out-of-cell time *every* day of the week. Class members in these units will be provided with 90 minutes of structured therapeutic activity per week. CDCR will ensure that all CCCMS STRH cells have access to cable and electricity and will permit class members in these units to have personal radios or televisions. Radios will be provided to all class members in these units who do not already possess televisions or radios. CDCR will also install pull-up or dip bars in all individual exercise yards and will provide misters to cool the yard on hot days, where necessary.

Female CCCMS prisoners will not be housed in the standalone ASU buildings. They will have their out-of-cell time increased to 15 hours per week from the previous 10 hour requirement. They will be provided with 90 minutes of structured therapeutic treatment per week and will be permitted to have radios or personal televisions, as the units allow.



As of March 2016, Short-Term Restricted Housing (STRH) units have been activated at Corcoran, HDSP, KVSP, LAC, PBSP, PVSP, SAC, SATF, and SVSP. CDCR policy now requires that CCCMS prisoners in an ASU be transferred to an STRH unit within 30 days, unless a few narrow exceptions apply (*e.g.*, upcoming BPH hearing, parole release date, etc.). Similar programs are being established for CCCMS class members placed in ASU while housed in Reception Centers. As of March 2016, DVI and NKSP have opened STRH-Reception Center programs. WSP and CIM are slated to have STRH-Reception Center programs opened by the end of April 2016.

## CCCMS Long Term Restricted Housing

CDCR's new policy also creates specialized housing units for CCCMS class members serving SHU terms. These units are called Long-Term Restricted Housing (LTRH). Class members in these units will be offered 15 hours per week of out-of-cell activity, including 90 minutes of structured therapeutic activity and 3.5 hours of out-of-cell activity on the dayroom floor.

These housing units are being opened in stages. As of March 2016, we understand that CIW has opened its Long-Term Restricted Housing (LTRH) unit. Corcoran has opened two LTRH units. CDCR plans to open more male LTRH beds for CCCMS class members at CCI in 2016.

## Case Conference Process for Inmates Placed in DSH While Serving SHU Term

To address the problem of class members "cycling" between segregation units and inpatient psychiatric care, CDCR has developed a new policy by which "case conferences" will be held for some class members who are serving SHU terms before they are discharged from the Department of State Hospitals (DSH) or a Psychiatric Inpatient Program (PIP). The policy applies to inmates referred to DSH or PIP who are serving SHU terms and were either at the CCCMS level of care at the time of referral or were not on the mental health caseload at the time of referral.

Under the new policy, case conferences will involve staff from DSH/PIP and CDCR mental health, and will address the patient's discharge from the inpatient program. The conference will consider whether it is necessary to retain the inmate in segregated housing and the kind of treatment should be provided after the patient discharges from DSH/PIP. No inmate serving a SHU term may be discharged from DSH or PIP to a SHU. Instead, the inmate may be placed in a PSU or the CCCMS LTRH, depending on the appropriate level of care.

The new policy also requires CDCR mental health clinicians who believe that placement in segregation has impacted the mental health of their patients to provide that information in the referral packet for the patient's placement in DSH or PIP.

B - 6

**Use of Force**

CDCR has revised its use of force policies to include new requirements for staff during controlled uses of force. A "controlled use of force" means any force used by staff where there is no immediate threat – for example, force used during a cell extraction would usually be a controlled use of force.

Under the revised policies, staff must consider an inmate's mental health status, medical concerns, and ability to understand and/or comply with orders before using any controlled use of force. Staff must also provide a cool-down period for an inmate, to give that inmate an opportunity to comply with custody staff orders. The cool-down period should include clinical intervention by a licensed mental health practitioner.

During the cool-down period, mental health staff will review the inmate's health record and assess whether the inmate is able to understand or comply with orders. Staff are also encouraged to try alternatives to force, such as involving religious leaders, correctional counselors, correctional officers, and/or other staff that know the inmate well. So long as there is no imminent threat to staff or inmates, the cool-down period should continue until all reasonable interventions have been attempted.

If an inmate cannot understand orders, OC spray can only be used if there is documented authorization from the Warden, Chief Deputy Warden, or Administrative Officer of the Day (AOD). If an inmate can understand orders but cannot comply, staff are required to first try using alternative strategies before using force. Again, OC spray can only be used if the Warden, Chief Deputy Warden, or AOD gives written authorization.

The revised policies place new limits on the amount of OC spray that can be used during controlled use of force. When OC spray is used, inmates should be allowed to decontaminate outside their cell whenever possible.

CDCR has also restricted when "immediate" force can be used. Immediate force is any force that is used by staff to respond without delay to a situation. Under the revised policies, immediate force can only be used if there is an imminent threat to the security or safety of persons (for example, an escape attempt, ongoing physical harm, or active physical resistance by an inmate). Staff are required to use controlled force, rather than immediate force, whenever possible.

For example, this means that staff generally cannot use immediate force to regain control of a food port. If an inmate does not relinquish control of the food port, only a controlled use of force is permitted. As another example, staff may use immediate force (*e.g.*, OC spray) to stop an inmate from attempting to break a food tray. However, staff cannot use immediate force if the inmate has retained the food tray, but is making no



attempt to break it. If the inmate retains control the food tray for 24 hours, staff may consider using controlled force.

There are also additional videotaping requirements for immediate uses of force. The revised policies require video recording of the immediate use of force whenever time and resources allow. Any immediate force that is recorded, or captured on security cameras, will be placed into evidence.

In January 2016, CDCR changed its policy regarding the use of "hand-held batons." The policy now states that the "baton should not be carried in the extended position unless it is being utilized for the protection of the inmate and/or staff."

We understand that CDCR has completed its training on the new controlled use of force and general use of force policies. Revisions to the CDCR Department Operations Manual (DOM) to reflect the policy changes have also taken effect.

### The Disciplinary Process & Rule Violation Reports (RVRs)

If you have been issued a Rules Violation Report (RVR), your mental illness may have played a role in the behavior resulting in the RVR (or "115") write-up.

If you are an EOP patient or are housed in either a Mental Health Crisis Bed (MHCB) or inpatient facility, a mental health clinician must complete a mental health assessment within fifteen calendar days of the RVR. This report by a mental health clinician is called a mental health assessment or a 115-X or a 115-MH. The purpose of this evaluation is to determine whether your mental illness influenced the behavior which resulted in the RVR, whether you need to have a staff assistant during your 115 hearing, and whether any punishment you receive should be reduced due to the influence of mental illness on your actions. If you are an EOP patient and did not receive a 115-X or 115-MH after receiving an RVR, you can submit a HC-602 appeal on the matter. This mental health assessment is not a confidential interview, and it is not done by your treating clinician.

If you are at the CCCMS level of care, you should be referred for a mental health assessment if the RVR may result in a SHU term, or if your behavior is considered to be "bizarre, unusual or uncharacteristic" for you.

The State recently made additional changes to its RVR procedures. These changes include:

First, custody staff, mental health staff, and Senior Hearing Officers will receive additional training on the Inmate Disciplinary Mental Health Assessment process.



Second, CDCR created a new process that allows an assessing mental health clinician to recommend that an inmate's behavior be documented in an alternate manner – that is, instead of through an RVR. This may be appropriate in cases where the behavior is determined to be strongly influenced by mental illness, developmental disability, or cognitive or adaptive functioning deficits.

Third, certain categories of behavior are now excluded from RVR process, meaning that a prisoner should <u>not</u> receive an RVR for any of the following:

1. Behavior that occurred in connection with cell extractions for involuntary medication or involuntary medical treatment;

2. Behavior that occurred in connection with a cell extraction for transfer of the inmate to a mental health inpatient unit or between mental health inpatient units;

3. Behavior that occurred in connection with being placed in mental health restraints and/or seclusion; and

4. Behavior that is determined to be an act of attempted suicide or self-mutilation.

Finally, CDCR has changed its policy so that Inmate Clerks will no longer process RVR documentation.

## PROOF OF SERVICE BY MAIL

### BY PERSON IN STATE CUSTODY

I, _Leon Hardin_ , declare:

I am over 18 years of age and a party to this action. I am a resident of _CSP-Sacramento_

_____ Prison,

in the county of _Sacramento_ .

State of California. My prison address is: _P.O. Box 29006b_ ,

_Represa, Ca, 95671_ .

On _3-27-18_ .
(DATE)

I served the attached: _Amended [First] Complaint, §1983_

_and Exhibits A - B._
(DESCRIBE DOCUMENT)

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope, with postage thereon fully paid, in the United States Mail in a deposit box so provided at the above-named correctional institution in which I am presently confined. The envelope was addressed as follows:

Attorney General
Office California Department of Justice
Attn: Public Inquiry Unit-Legal
P.O. Box 944255
Sacramento, Ca, 94244-2550

U.S. Dist. Court
Eastern Dist. OF Cal.
501 "I" St. Ste. 4-200
Sacramento, Ca. 95814

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _3-27-18_
(DATE)

_____
(DECLARANT'S SIGNATURE)